IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PARAH, LLC, and OZONICS, LLC, <br><br> Plaintiffs, <br><br><br><br> vs. <br><br><br><br> G' STRAT LLC d/b/a WHITETAIL'R, <br><br> Defendant. | MEMORANDUM OPINION AND ORDER <br><br><br><br> Case No. 2:13cv756 <br> Judge Dee Benson |

This matter is before the court on Defendant's Motion to Dismiss for Lack of Personal

Jurisdiction. The court held a hearing on the motion on January 28, 2014. At the hearing,

Plaintiff was represented by L. Grant Foster and Christopher B. Hadley. Defendant was

represented by Seth Black and Kelly Preece. The court took the matter under advisement. The

court has considered the memoranda and other materials submitted by the parties, as well as the

law and facts relating to the motion. Now being fully advised, the court renders the following

Memorandum Decision and Order.

## BACKGROUND

Plaintiffs form a company based out of Texas that own and exclusively license patent

rights relating generally to use of ozone producing devices to eliminate scents associated with a

hunter in the field. Plaintiffs' ozone generator systems are sold worldwide through the websites

of on-line distributors which include Cabelas, Bass Pro Shops, Dick's Sporting Goods, The

Sportsman's Guide, and HWO Archery. Plaintiffs brought this action against Whitetail'r

("Defendant") for patent infringement claiming Defendant sold products ("Accused Product(s)") in violation of Plaintiffs' patent.  Defendant's principal place of business is Wisconsin.   The records show that prior to this lawsuit, internet purchasers from Utah were able to purchase the Accused Products through Defendant's website.  The records also show Defendant utilized another company, Heater Body Suit ("HBS"), as a distributor to advertise and sell the Accused Products.  Defendant and HBS made multiple videos introducing and explaining the Accused Products that could be watched by clicking certain links on HBS's website.  HBS records show that two heater body suits containing the Accused Products were sold to Utah residents.  In addition to these two sales, Plaintiffs' counsel ordered an Accused Product from the HBS website and the product was shipped to a Utah address.

There is some dispute over the interactive nature of Defendant's website.  Defendant claims its website is not interactive, or only moderately interactive, while Plaintiffs believe it is highly interactive.  Prior to this lawsuit customers visiting Defendant's website, *whitetailer.com*, could add one of the Accused Products to their virtual shopping cart, select any state within the United States from a drop down menu, and purchase the Accused Product for delivery to the state selected.  In addition to Defendant's website, customers could also purchase the Accused Products through HBS's website, *heaterbodysuit.com*, by placing a heater body suit that included an Accused Product in a virtual shopping cart and selecting any state within the United States as the shipping destination.

**DISCUSSION**

Defendant moves to dismiss Plaintiffs' Complaint, arguing that there is no personal jurisdiction over it in Utah. Whether a district court has personal jurisdiction over a defendant in a patent infringement case is determined under applicable Federal Circuit case law. *See Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005). When a court's jurisdiction is contested, the plaintiff "bears the burden of establishing personal jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. Of Canada*, 149 F.3rd 1986, 1091 (10th Cir. 1998). However, in the preliminary stages of litigation, the plaintiff's burden is only to establish a prima facie case that jurisdiction exists. *Electronic Realty Assocs. V. Vaughan Real Estate Inc.*, 897 F.Supp. 521, 522 (D. Kan. 1995). "Where... there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id.* All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of this showing. *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Courts recognize two types of personal jurisdiction, general and specific. Plaintiffs do not allege that there is general jurisdiction over the Defendant in Utah. Defendant's contacts with Utah are not the type of "continuous and systematic" contacts that would subject it to general jurisdiction in Utah. *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Therefore, the court will only consider whether there is specific jurisdiction over Defendant. The Utah Supreme Court has stated that "specific jurisdiction gives a court power over a defendant only with respect to claims arising out of particular activities of the defendant in

the forum state. For such jurisdiction to exist, the defendant must have certain minimum

contacts." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992).

The Utah Supreme Court explained:

> The proper test to be applied in determining whether personal jurisdiction
> exists over a nonresident defendant involves two considerations. First the
> court must assess whether Utah law confers personal jurisdiction over the
> nonresident defendant.... Second, assuming Utah law confers personal
> jurisdiction over the nonresident defendant, the court must assess whether
> an assertion of jurisdiction comports with the due process requirements of
> the Fourteenth Amendment." *State ex rel. W.A.*, 63 P.2d 607, 612 (Utah
> 2002). "This test is merely a refinement of [the Utah Supreme Court's]
> previous tests governing the assertion of personal jurisdiction. It
> recognizes that the legislature may provide for the extension of personal
> jurisdiction in statutes other than the long-arm statute.

*Id*.

The Utah Supreme Court clarified that "[u]nder this new test, however, any legislative

enactment of personal jurisdiction, in or out of the long-arm statute, cannot justify on its own the

assertion of jurisdiction. The true safeguard on the extension of personal jurisdiction is the

constitutional due process analysis, with its focus on minimum contacts and on traditional

notions of fair play and substantial justice." *Id*.

In relation to this case, Utah's long-arm statute provides, in pertinent part, as follows:

> Any person ... who in person or through an agent does any of the following
> enumerated acts, submits himself ... to the jurisdiction of the courts of this state as
> to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of
> warranty;....

Utah Code Ann. § 78B–3–205. The statute broadly defines "transaction of business" to mean

"activities of a non-resident in this state which affects persons or business within the State of

Utah." *Id*. § 78B–3–202(2). The long-arm statute states that it is intended to be interpreted

4

broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id*. § 78B–3–201; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).

Consistent with the long-arm statute's command to apply it as broadly as permitted by due process, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Therefore, this court will first determine whether the exercise of personal jurisdiction over Defendant meets federal due process standards.

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, (1980) (citations omitted). The "minimum contacts" necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985)). If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id*. (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)).

Under the first prong of the due process analysis, the court should "examine the quantity and quality of [defendant's] contacts with Utah." *Arguello v. Industrial Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). Defendant argues that in this case there is no personal jurisdiction over it because it did not purposefully direct its activities towards Utah. Defendant asserts that no Accused Products were sold to Utah residents from its own website, and one of the three Accused Products sold to Utah residents was accomplished only by Plaintiffs using HBS's website. Plaintiffs, however, contend that this court can exercise personal jurisdiction over Defendant because the websites of both Defendant and HBS purposefully directed commercial activity toward Utah residents. Furthermore, Plaintiffs' patent infringement claim arose out of and relates to the sales activity on Defendant's and HBS's website.

The United States Court of Appeals for the Tenth Circuit applies the *Zippo* "sliding scale" analysis to determine whether a website purposely directs activities to a given forum state. *Zippo Mfg. Co. V. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). Under the *Zippo* test, passive websites that only provide information do not support personal jurisdiction, whereas those sites that allow business transactions to occur provide sufficient contacts to support personal jurisdiction. "Whether the exercise of jurisdiction is appropriate depends upon the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1296 (10th Cir. 1999) (quoting *Zippo*, 952 F.Supp. at 1123-24).

In *Rainy Day Books*, the court found that a defendant's internet website fell within the category of clearly doing business over the internet because the website permitted a user to subscribe to a mailing list, obtain information about gift certificates, and allowed a user "to

6

purchase books online by clicking on a link to BookSense, a third-party provider of online ordering services." *Rainy Day Books, Inc. v. Rainy Day Books & Café*, 186 F.Supp.2d 1158, 1164 (D.Kan. 2002). Similarly, in this case, customers visiting Defendant's website, *whitetailer.com*, could add one of the Accused Products to their virtual shopping cart, select any state within the United States from a drop down menu, and purchase the Accused Product for delivery to the state selected. In addition to Defendant's own website, customers could also purchase the Accused Products through HBS's website, *heaterbodysuit.com*, by placing a heater body suit that included the Accused Product in a virtual shopping cart and selecting any state within the United States as the shipping destination.

Just as the court found in *Rainy Day Books*, this court finds Defendant is clearly doing business over the internet. Defendant has purposely set up a website providing for a high level of interactivity, which encourages customers to access its website to purchase the Accused Products. Defendant teamed up with HBS for distribution and utilized HBS's website to advertise and sell the Accused Products to any state within the United States. Even though the ordering process that ultimately accomplished the sale and shipment of three Accused Products to the state of Utah was done through a distributor, Defendant received an economic benefit from the sales.

Defendant argues that none of its advertising efforts were directed toward Utah or its residents and it did not sell any of the Accused Products to Utah residents from its own website. However, the *Rainy Day Books* court found that individual orders were not determinative. Rather, the court explained that "[t]he pertinent inquiry in the personal jurisdiction analysis is whether defendant, by its own actions, has purposefully availed itself of the privilege of

conducting business in this jurisdiction so that it should reasonably anticipate being haled into court in this forum." *Id.* at 1165. In *Rainy Day Books*, the court found that "Defendant's own actions of maintaining a commercial website with the knowledge that it allegedly infringed upon Plaintiff's service mark and that Plaintiff's primary bookstore business operated in Kansas ... created the minimum contacts with the forum." *Id.*

In addition, establishing jurisdiction over defendants with interactive websites requires that a defendant "clearly conducts business through its website or emails" plus "something more" to show the defendant's actions were actually directed at the *forum Zing Bros., LLC v. Bevstar, LLC*, 2011 WL 4901321 (D. Utah Oct. 14, 2011). The "something more" requirement was found in *Zing Bros*. where the defendant's website allowed a consumer to view product descriptions, add items to an online shopping cart, checkout online using a credit card, provide shipping information, and create a login and password. *Id.* The court found that the specific inclusion of Utah in a drop down list of states, and the website's statements that orders are solicited anywhere "inside the USA" was sufficient to establish that a site is "something more" than a non-targeted transaction site. In this case the Defendant has purposefully directed its activities in a substantial way toward the forum state. The "something more" here consists of:

(1) sales of Defendant's allegedly infringing products to Utah;
(2) the specific inclusion of Utah in the drop down list of states;
(3) the distributor and advertising partnership with HBS; and
(4) HBS's website which includes six educational videos focused on the Accused Products featuring Defendant's owner with the co-owner and CEO of HBS.

In *World–Wide Volkswagen*, the Court recognized that "the forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." 444 U.S. 286 (1980). In this case, Defendant

teamed up with HBS to distribute and advertise the Accused Products in order to put them into the stream of commerce with the expectation that they would be available for purchase throughout the country via the interactive internet site. Therefore, the court concludes that it is not contrary to due process standards to assert jurisdiction over Defendant.

Finally, Defendant has not demonstrated why the exercise of personal jurisdiction would be unreasonable. "Courts have held that '[s]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *A.L. Enters., Inc. v. Sebron*, 2008 WL 4356958 at *2 (D.Utah Sept. 17, 2008). The burden of litigating in Utah is not any greater than the burden Defendant voluntarily entered into to sell products to Utah. Modern methods of communication reduce the burden of long-distance litigation significantly. The burden of litigating in Utah does not constitute a deprivation of due process. The court concludes that the exercise of jurisdiction in this case is reasonable under constitutional standards. Accordingly, the court denies Defendant's motion to dismiss for lack of personal jurisdiction.

DATED this 7th day of February 2014.

_____
Dee Benson
United States District Judge